Bayard v. Klinge.

---

*John M. Bayard

*vs.*

Frederick Klinge.

Under the provision in *Art. XI, sec. 1 of the Constitution*, that all laws for removal of county seats, shall, before taking effect, be submitted to the electors of the county, at the next general election after the passage thereof, and be adopted by a majority of such electors, it is not competent for the legislature to provide that such a law shall take effect and be in force after its submission to the electors of said county at the next general election after the passage thereof, and its adoption by a majority of such electors voting thereon ; nor is such a construction sanctioned by the case of *Taylor vs. Taylor et al.* 10 *Minn.* 107.

Where, therefore, in a contest as to the result of a vote upon the question of the adoption of *ch.* 95, *of Special Laws of* 1867, for the removal of the county seat of Wabasha county from Wabasha to Lake City, to "*take effect and be in force after its submission to the electors of said county at the next general election after the passage thereof, and its adoption by a majority of such electors voting thereon,*" the district court found that at such election there were cast upon said question, 1,457 legal votes for, and 1,074 legal votes against the adoption of said special act, it.was held, that this fact did not support the conclusion of law based thereon by the district court, viz : the conclusion that the respondent was entitled to judgment declaring

---

*Mr. Justice Berry being unavoidably absent, took no part in the hearing or decision of the case.

said Lake City to be the county seat of said county, and that said special law was adopted; but that the same was erroneous.

This is a proceeding under *Gen. Stat. ch.* 1, *sec.* 52, to contest the result of the vote upon said question as the same had been certified and declared by the board of canvassers. *Held,* that the prevailing party in such contest is not entitled to judgment for disbursements in the district court.

The defendant in this action appeals from the judgment of the district court for Wabasha county. The case is sufficiently stated in the opinion of the court.

BIGELOW & CLARK, JOHN VAN DYKE, S. L. CAMPBELL and JOHN MURDOCK for Appellant.

SCOTT & HAHN, E. T. WILDER, W. W. PHELPS and C. K. DAVIS for Respondent.

*By the Court*—RIPLEY, CH. J.—At the general election in November, 1867, the question of the removal of the county seat of Wabasha county from Wabasha to Lake City, was voted on, under *ch.* 95 *of Special Laws of* 1867, providing for such removal in case of the adoption of said act; and the county canvassing board, to whom the returns of the election were made, declared and certified that 2,785 votes had been cast for, and 4,941 against the said removal and the adoption of said special law. Said Bayard thereupon commenced this proceeding in the district court against the county commissioners, to contest said decision under *Gen. Stat. ch.* 1, *sec.* 52, on whose failure, said Klinge was admitted to appear and defend. The district court, thereafter, upon trial by the court of the issues involved, rendered judgment for contestant, that said official canvass was erroneous, and that of the whole number of legal votes cast in said county, at said election, upon said question of

Bayard v. Klinge.

county seat removal, and of the adoption of said special law, a majority of 383 votes were cast "for removal of county seat to Lake City;" that the special act aforesaid is adopted, and that said town of Lake City, in said county, is the county seat of said county of Wabasha, and for contestant's disbursements. The contestee appeals to this court.

So much of said act as is at present material to be considered is as follows:

Sec. 1. "The county seat of Wabasha county is removed from Wabasha to Lake City, subject to the proviso contained in section seven (7) of this act."

Sec. 7. "This act shall take effect, and be in force, after its submission to the electors of said county at the next general election after the passage thereof, and its adoption by a majority of such electors voting thereon."

Section three provides that the form of votes in favor shall be, "For removal of county seat to Lake City;" those opposed to the adoption of the law, "Against removal of county seat."

*Art. XI, sec.* 1, *of the Constitution*, provides, that "all laws * * * for removing county seats, shall, before taking effect, be submitted to the electors of the county * * * to be affected thereby, at the next general election after the passage thereof, and be adopted by a majority of such electors." The district court finds as a fact, that at said election there were cast, upon said question of removal and adoption of said special law, 1,457 legal votes "for removal of county seat to Lake City," and 1,074 "against removal of county seat;" thereupon it finds the conclusion of law that contestant is entitled to the relief prayed for by him, viz: the judgment aforesaid. The question arises whether such fact supports the conclusion based upon it, as aforesaid. It is apparent that it does not, unless the

words used in the constitution, viz, "a majority of such electors," can be construed to mean a majority of those voting upon the question: that is, if these expressions are interchangeable, and the equivalent respectively of each other, it was competent for the legislature to provide that the act should take effect upon its adoption by a majority of those voting thereon; otherwise, not.

The respondent insists that they are; the appellant that they are not thus interchangeable; and both parties cite and rely on the case of *Taylor vs. Taylor et al.*, 10 *Minn.* 107.

The majority of this court, as then constituted, held in that case, that inasmuch as a literal construction of the constitutional provision above quoted, would in their opinion involve great hardship and absurdity, they were therefore to deviate a little from the received sense, and literal meaning of the words, and interpret it in accordance with what appeared to be the intention of its framers.

Hence, considering that the constitution requires such law to be submitted to the electors at a general election; that the returns would show the actual number of persons present at such election, *voting on any question;* that as a general rule it is the duty of every elector to attend and vote at such general election, and that the law presumes that every citizen does his duty, they hold, that in the eye of the law, those present and voting at such election, not on any such question then submitted, but on any question then to be voted on, constitute the electors of the county, in the sense in which *Art. XI, sec.* 1, *of the Constitution,* uses those words; that is to say, that body, the adoption by a majority of whom of such a law as is there referred to, would be the adoption thereof, by a majority of the electors of the county.

If there could otherwise have been any possible doubt that the above is a correct statement of that decision, the observations in the opinion, upon the difference between this section and *sec. 2, of Art. XI,* would certainly have removed it. "Section two," it states, "requires only a majority of those voting on the particular question submitted. Section one requires a majority of those voting at *the general election* at which the particular question is submitted. For illustration: at a general election, a law is submitted for adoption, or rejection. In the county in which such law is voted on, 2,000 votes are polled, but only 1,200 on the question of the adoption of such law. If the law is submitted under section one, a constitutional majority would be at least 1,001; if submitted under section two, 601 would be a constitutional majority." It is evident, therefore, that the case of *Taylor vs. Taylor et al.,* does not sanction the construction of *sec. 1, Art. XI,* contended for by the respondent. The law under which that election was held, was, by its terms, following therein the language of the constitution, to take effect after its submission at the next general election to the electors of the county, and its adoption by a majority of such electors.

The majority of the court, in view, as we have seen, of the great hardship and absurdity which it appeared to them would be the result of a literal construction, did a little deviate, in that case, from the received sense, and literal meaning of the language of the constitution and the act, and construed "a majority of such electors" to mean a majority of the electors voting at such general election.

In the case at bar, however, the respondent would have us deviate a little farther yet from the received sense, and literal meaning of the language of *Art. XI, sec.* 1, and

moreover, in so doing, overrule *Taylor vs. Taylor et al.*, by holding that "a majority of such electors," does not mean a majority of those voting thereat, but a majority of those who may see fit to vote thereat on this particular question. We see nothing either in principle or authority to justify us in so doing.

Such a construction, so far from removing any absurdity, which a literal construction might be supposed to involve, and which the rule laid down in *Taylor vs. Taylor* would not obviate, might, it is evident, lead to one peculiar to itself, viz: that, though the number of electors present and voting at such general election may be, and in such case would be, shown by the record to have been greater than the number who saw fit to vote on the particular question; (as, for instance, if there be 2,000 electors present and voting at such election, and but 1,200 see fit to vote on this question;) yet, in the eye of the law, the 1,200, and no the 2,000, would constitute the electors of the county.

This would be quite as absurd a practical result, as any which would probably flow from a literal construction.

A material link in the chain of reasoning by which the majority of the court in *Taylor vs. Taylor et al.* arrived at their conclusion, is, that as it is the duty of every elector to attend and vote at such general election, the law, which presumes that every one does his duty, presumes that he did so attend and vote.

Granting, however, not only that it is his duty so to attend and vote on those questions then arising under the general law, in which every citizen is alike interested; but also on matters like that before us, of purely local interest, which by any special law are then to be submitted; (a proposition, which, as at present advised, appears to us to be uutenable;) still, the further presumption that he did vote on such par-

Bayard v. Klinge.

ticular question, could not arise in the face of the provision of the law now before us, that it shall take effect if adopted by a majority of those voting thereon, for the law of itself contemplates herein the existence of electors who will not vote at all on the questions submitted by it; and, of course, no such presumption could arise in any case, in which the record, as in the case above supposed, showed on its face, that they did not so vote. It is suggested, however, that though it should appear by the record that all the electors have not voted on the question, those who have not will be deemed to acquiesce in the action of the majority. The principle upon which such a presumption is to be based is not stated, and we cannot perceive that there is any. The respondent says, indeed, that a man's inaction is not to be counted as a vote with the minority, but that is no reason why it should be counted with the majority. It is only another way of saying that it should be.

Nor is any hardship suggested as resulting from the construction of the court in *Taylor vs. Taylor et al.*, requiring the adoption of a more liberal rule, unless it be, that in many previous acts for changing county lines, and removing county seats, the provisions for their submission are in the same or equivalent language with that before us. Such of these as were passed since the decision in that case, if they have been acted on, have been so, with actual knowledge of the law; and as to those previously passed, it will be time enough to consider the propriety of revising that decision because of any hardship resulting to those who ignorantly acted under them, when the case arises. It should be remembered, however, in this connection, that it does not follow because any such law provides for its adoption by a majority of those voting thereon, that it was not, in point of fact, adopted by a constitutional majority. If so, it

would seem to have gone into effect under the constitution, though not by virtue of its own provisions in that behalf.

With regard to the weight of authority on the point under consideration, we see no reason for any farther deviation from a literal construction, than that involved in the decision of the court in *Taylor vs. Taylor et al.* It is to be remarked, that the cases therein cited from Tennessee and Illinois, can in no just sense be said to support the respondent's construction. In the Tennessee case, the court rests its opinion that a majority of the voters of the county means only a majority of those who may attend the polls and actually vote, upon what it calls the "fixed and stable ground," that when a question or an election is put to the people, and is made to depend upon a vote of the majority, there can be no other test of the number entitled to vote than the ballot box.

This reasoning would be relevant in support of the respondent's construction, if the act before us had been submitted at a special election held for that purpose. Obviously, however, it has no application to such a case as the one before us, for, if the ballot box be the test, the ballot box, at a general election, may show, as the law itself implies that it will, a greater number entitled to vote, than actually voting on this particular question. As to the supreme court of Illinois, it decides in so many words, that a majority of the legal votes cast at the election, not a majority of those voting on any particular question, is a constitutional majority of the voters of the county; thus counting those who do not vote, in the negative, instead of with the majority. Looking to other decisions, the constitutional provision passed upon in *Gillespie vs. Palmer*, 20 *Wis.* 544, is so differently worded from our own, as to be distinguishable on principle. *State vs. Mayor, &c.*, 37 *Mo.*

Bayard v. Klinge.

270, and *State vs. Binder*, 38 *Mo.* 450, were cases of special elections, and the reasoning of the court is therefore not relevant to this case.   *The State vs. Winkelmeire*, 35 *Mo.* 103, on the other hand, is a direct authority for a literal construction of the constitution.

The respondent refers to the prior acts above mentioned, as a practical construction by the legislature in his favor, of the clause in question.   Whatever effect would be due to a succession of statutes, uniform in language on this point, the argument has no force in its application to these acts, which are not thus uniform.   For example:  The law under which *Taylor vs. Taylor* arose, uses, as above stated, the words of the constitution, as also one for the removal of the county seat of Sherburne county, occurring in the same volume of Special Laws, at page 210.   More noticeable still are the Special Laws of 1866, containing as they do on page. 224: an act for the removal of the county seat of Sherburne county, to take effect on its adoption by a majority of the votes cast on that question; and one on page 225, for the removal of the county seat of Chisago county, to take effect on its adoption by the majority of the electors of the county; and one on page 227, for the removal of the county seat of Monongalia county, to take effect on its adoption " by the voters at the next general election;" all of which were passed after the decision in *Taylor vs. Taylor et al.;* so that if the legislature thereby *practically* construed these expressions as synonymous, they did so, knowing that they were not.

We are therefore of opinion, that the finding of fact aforesaid, does not support the conclusion of law based thereon, and that said law has not taken effect, for the reason, that it was not competent for the legislature to provide, that it should take effect upon its adoption by a

majority of legal votes cast thereon. We are not now considering the effect of evidence. Whether, upon issue joined on an allegation that such act had been adopted by a majority of the electors of the county, the aforesaid facts would be sufficient *prima facie* evidence, upon which, in the absence of evidence tending to show that those voting for the law were not a majority of all the electors present and voting at such general election, a finding that they were such a majority, might be based, is a question which cannot arise, where no case is made, or bill of exceptions signed; where, moreover, the respondent's notice of contest contains no such allegation. Such an allegation was necessary, if he intended to contest the official canvass on that ground. *Taylor vs. Taylor*, 10 *Minn. at p.* 165. On the contrary, the ground of contest is alleged to be, that a majority of the legal votes cast on said question, were cast for the removal of the county seat, and the adoption of said special law, and not against the same, as by the official canvass aforesaid is made to appear

As this was an immaterial allegation, so too, it is immaterial, that the court finds that it is true in point of fact. To entitle him to the relief sought, the respondent must have alleged, and proved, under the constitution as expounded by this court, that said special law had been adopted by a majority of the legal voters of the county present and voting at said election.

It follows from what has been said that the judgment must be reversed. It becomes unnecessary, therefore, to consider the other points made by the appellant with the exception of that as to disbursements, which still has a practical bearing, though in a different direction. We will observe, however, that appellant's point that this special act had not become a law for any purpose at the time when

the election was held, and that, therefore, there was no authority for voting thereon, seems to us not to be well taken.

The act is awkwardly worded in this respect, but reason requires it to be read as though the proviso in section seven, were a part of section one, and applicable to that section only. The meaning is, that so far as the removal is concerned, the act shall not take effect till after its submission and adoption, when and as provided in the act.

With respect to the disbursements below, the allowance, *eo nomine*, of costs, which word includes disbursements, unless otherwise specified by statute, is a creature of statute, and unknown to the common law. 2 *Bl. Com.*, book 3, *ch.* 24, *p.* 399. *Gen. Stat. ch.* 67, does not in terms apply to such a proceeding as this, and though *ch.* 1, *sec.* 52 makes the county commissioners the defendants in this matter in the first instance, as respondent says, yet it would hardly be contended, that in case of failure by them, or, in their default, of any other elector, to appear and defend, judgment for disbursements could be rendered for contestant against them, or any one else, though he is certainly the prevailing party, and in a civil action would have judgment for disbursements against the defendant on default.

The respondent contended, that disbursements were rightly taxed against appellant, because his appearance was voluntary. So, however, would that of the county commissioners have been, and we do not see that this circumstance would bring this proceeding within the statute, as against them individually, nor do we see on what principle a judgment could be rendered against them as a board, binding on the county, nor do we understand, that there is, in this state, any such general principle outside the statute, and govern-

ing all actions, as that stated by respondent, viz: that costs and disbursements necessarily follow the judgment.

Nor do we think that this is properly to be termed a "civil action." It is true, that *ch.* 1, *sec.* 52, provides, that the commissioners, or other elector, may appear and defend in such contest, and introduce evidence as in other actions; but any inference that this is, on that account, a "civil action," is rebutted by the preceding paragraph, that depositions may be taken "in the same manner as in civil actions."

The statute as to mandamus, prohibition, and divers other special proceedings, makes especial provision for costs and disbursements, which is an additional reason for not holding one in which no such provision is made, to be within a statute not in terms applicable to it.

It is also to be observed, that it seems to be necessarily implied from *sec.* 49, that costs are not involved in a contest as to the election to office, (the proceedings in which are similar to these) till it has been removed to the supreme court; on the whole, therefore, we think that the allowance of disbursements by the district court, as aforesaid, was erroneous.

Judgment reversed.