THE STATE, EX REL J. J. JONES v. THE COUNTY COMMISSIONERS OF LANCASTER COUNTY.

1. **Township Organization**: VOTES NECESSARY TO ADOPT. Section five, Art. X, of the constitution is mandatory; therefore to adopt township organization it requires a majority of all the legal voters of the county, voting at the general election, at which the question is submitted.

2. ———: CONSTITUTIONAL LAW. The act of February 16, 1877, entitled "an act to provide for township organization," embraces several subjects not indicated by the title, and as these several subjects are dependent on each other and form inseparable parts of the same law, the whole act is unconstitutional and void.

ORIGINAL application for a mandamus to compel the county commissioners of Lancaster county to complete

township organization in said county by dividing the county into towns, appointing town officers, etc., as provided by an act of the legislature entitled "An act to provide for township organization," Laws, 1877, 71. Further facts appear in the opinion.

*M. H. Sessions*, for the relator.

Section 11, Article III, of the constitution provides that "no bill shall contain more than one subject, and the same shall be clearly expressed in its title." The first question that presents itself in the discussion of this case is, is the act of the legislature under consideration obnoxious to this provision of the constitution? It will perhaps be contended that it is in this, to-wit: that it contains more than one subject, inasmuch as it provides for township organization, and also for county government under such organization. This clause of the constitution must be read in connection with Sec. 5, Art. X, which provides that the "legislature shall provide by general law for township organization under which any county may organize, whenever a majority of the legal voters of such county, voting at any general election, shall so determine." Here we have the positive mandate of the constitution for the legislature to provide by general law "for township organization," thereby clearly indicating in the constitution that the title to the act must be "for township organization."

The whole system of township organization in this country is well understood to embrace not only the township organization or government, but as well the elements which compose the county government; and the expression, "township organization," in its popular signification, would embrace both, notwithstanding the two organizations are composed of the same material, and essentially different in their effects; the act may, in

a technical sense, embrace more than one subject, and but one expressed in the title, yet they are so closely and intimately connected by common consent, and the popular understanding of the phrase, and its general adoption, that although the technical reading may bring it within the letter of the constitution, it leaves it without the spirit and intent of the same. This is not all. The constitution not only provides that the legislature shall provide by general law "for township organization," but the same mandate directs them to provide by general law for township organization "*under which any county may organize.*" Had not this law contained that which it is contended makes it unconstitutional, the same would not be perfect nor complete; neither would it have answered the requirements of the constitution in requiring the passage of the same. *Board of Supervisors. of Ramsey Co. v. Heenan,* 2 Minn., 330, 339. *Clinton v. Draper,* 14 Ind., 295. *Brewster v. City of Syracuse,* 19 N. Y., 116.

The next question is, has the county of Lancaster voted for township organization within the spirit and meaning of the constitution?

The difficulty arises in construing the clause *whenever a majority of the legal voters of such county, voting at any general election, shall so determine.* Is this to be literally construed according to the exact letter, regardless of the spirit of the same, when taken in connection with other clauses of the constitution treating upon the same subject matter? Or does it mean a *majority of all the legal voters of the county, voting on the question, shall vote for the same?*

In determining questions of construction, recourse should first be had to the instrument itself, and see if that is not its own best interpreter as to its true meaning concerning doubtful clauses, and in that light let us examine our constitution. In voting for township or-

ganization, what is the thing involved, and what is the first act the voter seeks to do? The answer is apparent; to subdivide the county into townships—one form of the division of the county. Now when you seek to divide a county the constitution becomes its own interpreter on this question of voters or voting. Section 2, Article X, provides as follows: "Nor unless a majority of all the legal voters of the county, *voting on the question*, shall vote for the same." That being the criterion and the construction to be adopted, the question was carried. Now let us examine section 3 of the same article, which is treating of striking territory from, or adding the same to any organized county; that provides as follows: "That no territory shall be added to any organized county without the consent of the *majority of the voters* of the county to which it is proposed to be added." Now if you adopt the construction contended for in this case, and say that the proposition is not carried, you have this anomaly in constitutional law, viz.: of having three different tests of determining the same question or principle, and each requiring a different constitutional majority. If you desire to divide the county you can do so by submitting the question to a vote of the people, and if a *majority* of all the legal voters of the county, voting on the question, shall vote for the same the county is to be divided. Or if you wish to add territory to your county, you can only do so by obtaining the consent of the *majority of the voters of the county* to which it is proposed to be added. But if you do not desire to do either of these things, and do wish to have township organization, then another rule is applied, and you must have a majority of legal voters of such county, voting at any general election. American Laws of Elections, § 445. *First Parish v. Stearns*, 21 Pick., 153. *Taylor v. Taylor*, 10 Minn., 107, 116. *R. R. Co. v. Davidson Co.*, 1 Sneed (Tenn.),

691. *Gillespie v. Palmer*, 20 Wis., 544. *St. Joseph Township v. Rogers*, 16 Wall., 664. *Osburn v. Staley*, 5 W. Va., 85. *Talbot v. Dent*, 9 B. M., 534, 538.

*S. B. Galey*, for the respondents.

The mere statement of the facts in connection with the requirement of the constitution would seem to be decisive of the point at issue. The legislature is prohibited from authorizing the adoption of " township organization " in any county, *unless* " a majority of the legal voters, voting at a general election, shall so determine." These words do not imply an acquiescence, or negative sanction, or negative assent, inferred from absence, but a positive vote in the *affirmative*. The number of votes required is specifically named, and there is no difficulty in ascertaining what that number is, since the law relating to general elections (General Statutes of Nebraska, page 354), provides the *means* or *evidence* by which the exact number of legal voters of the county voting at a general election may be determined, to-wit: the poll books in which is recorded the name of each person voting at the election. *The People v. Brown*, 11 Ill., 478. *Id. v. Wiant*, 48 Ill., 263. *State v. Winkelmeier*, 35 Mo., 103. *Id. v. Sutterfield*, 54 Mo., 391. *County Seat of Linn Co.*, 15 Kan., 530. Central Law Journal July 6, 1877, page 16.

The relator in this case relies principally on the decision of the supreme court of Wisconsin in the case of *Gillespie v. Palmer*, 20 Wis., 544, to sustain his view, that only a majority of votes cast upon *that question* is required. In that case the language used in the act of legislature was very different from the language of our constitution and act. In this case a literal interpretation of the language used leads to no difficulty or absurdity as it would in that; and the distinction between

" a majority of the votes cast at an election," and " a majority of the legal voters voting at an election," is clearly shown in the opinion of the court in that case, and to which reference is here made to sustain the view of the defendants in this case.

The act is in conflict with section 11, Art. III. The provisions of the constitution are mandatory, and must be complied with, or the act embracing more than one subject will be held inoperative and void. 3 West Virginia Reports, 588. 20 Ind., 490. 5 Neb., 305, 505. Cooley Const. Limit., § 148.

The act embraces more than one subject, to wit: 1. Township organization. 2. County organization. 3. Revenue.

The legislature, by the constitutional provision before quoted, is only authorized to " provide by general law for township organization," which both in letter and spirit means, to make provision by general law to invest the inhabitants or people of townships with certain corporate powers, by which they may have and enjoy the benefits arising from local government; giving them power as a body politic to lay out and repair roads, build their own bridges, take care of their poor, etc., etc., at their own expense, and in such manner as they shall see fit.

In pursuance of this authority—which is also a limitation upon legislative authority—the legislature, by the act in question, under articles 1, 2, 3, 4, 5, 6, 7, 8, 9, and 10, has made such provision.

By article two of said act the township corporation is created with the usual corporate powers, its rights and duties are defined, and a name is given to it. " Township organization " by this article is brought into existence " full fledged," and endued with all its faculties and powers. The other articles above specified, make provision for the exercise of the corporate powers, rights,

and duties conferred and imposed by said article two; and all these provisions are germane and incidental to the subject, and are properly connected therewith. If the legislature had ceased to act at this point, the bill would have contained but one subject, and the same would have been clearly expressed in its title.

Did the convention, or the people of this state, who adopted this constitutional provision on the subject of "township organization" mean anything else than the words used indicate? If not, and the legislature has legislated upon this subject as well as one or more *other* subjects in the same bill, then the act is void.

This provision of the constitution was borrowed from the state of Illinois, as every one knows. The legislature of that state has given to it the interpretation we contend for, which is evidenced by the revised statutes of Illinois, 1874, in which, under two different chapters, will be found the law of that state on the subject of "township organization" and "county organization" respectively. The interpretation of "township organization" by the legislature of Illinois has never been questioned in the courts of that state, and it is but reasonable to say, that when we borrowed from that state our constitutional provision, we also accepted its interpretation and meaning as defined by her legislature. See Sedgwick on Statutory and Constitutional Law, pages 412 and 413, and authorities there cited.

That portion of the constitutional provision, therefore, which imposes upon the legislature the duty of "providing by general law for township organization," means just what it says, no more, no less; the words following that clause refer only to what the people of any county may do under, or with reference to such a general law, if they shall so determine. See The American Cyclopædia, vol. 15, p. 828, "town."

When we eliminate from the act in question the sub-

jects of *county organization* and *revenue*, the act is still broader than its title. The title being " to provide for township organization," it in no manner indicates or expresses the provisions of the act in respect to the discontinuance of " township organization " and other provisions under article 16, relating to the same, as well as the re-enactment of the general law now in force, the election of county commissioners at a special election in January following, etc., etc.

When parts of a statute are unconstitutional, and other parts valid, the former being evidently designed as an inducement to the latter, so that the whole taken together warrant the belief that the legislature would not have passed the valid parts alone, then the whole act should be held inoperative and void. 13 Wis., 450. 2 Gray, 84. 22 Cal., 387. 33 Cal., 212. 14 Mich., 276. 5th Ohio State, 497. 25 Conn., 290.

GANTT, J.

The question of township organization was submitted to the vote of the legal voters of Lancaster county, at the general election held on the sixth of November, 1877, and a majority of the votes cast on that question were in favor of such organization. But the county commissioners refused to complete the township organization as required by the act of February 13, 1877, and in their answer to an alternative writ of mandamus against them they deny that the township organization was adopted by a majority of the legal voters of the county, voting at said general election, and aver that the act is unconstitutional, inoperative, and void. By stipulation of the parties it is admitted that 2,451 legal voters of the county voted at the general election; that 952 votes were cast in favor of township organization and 601 votes were cast against such organization. It there-

fore required 1,226 votes to constitute a majority of all
the voters who voted at such election.    The decision of
the first question raised by the answer depends on the
construction which must be given to section five, article
X, of the constitution, which declares that: "The legis-
lature shall provide by general law for township organi-
zation, under which any county may organize when-
ever a majority of the legal voters of such county, voting
at any general election, shall so determine."

It is the province of a written constitution to establish
fundamental maxims and fix rules of proceeding which
are usually looked upon as material to be done, and to
be regarded in the light of limitation upon the powers
to be exercised; and therefore it is said that in the
construction of a constitution "its terms must be taken
in the ordinary and common acceptation, because they
are supposed to have been so understood by the framers
and by the people who adopted it."    In *Oakley v. As-
pinwall*, 3 N. Y., 568, Bronson, J., in reference to the
construction of a constitution, said his "rule had been to
follow the fundamental law as it is written regardless
of consequences," and that "if the legislature or the
courts undertake to correct defects by forced and unnatu-
ral construction they inflict a wound upon the constitu-
tion which nothing can heal.    One step taken by the
legislature or the judiciary, in enlarging the powers of
the government, opens the door for another which will
be sure to follow; and so the process goes on until all
respect for the fundamental law is lost, and the powers
of the government are just whatever the authority pleases
to call them."

In the application of these principles to the above
provision of the constitution, it may be remarked, in the
language of Emmot, J., in *People v. Lawrence*, 36 Barb.,
186, that " it would be found upon full examination to
be difficult to treat any constitutional provisions as

merely directory and not imperative;" and certainly when the words are not used in a strictly technical sense, the only safe rule is to follow the fundamental law as it is written. In the. section quoted, the language admits of but one meaning, and that is imperative in its operation, and therefore it seems to me quite clear that to adopt the township organization there must be an affirmative vote of a majority of all the legal voters, voting at the general election.

In the case of *The People v. Brown*, 11 Ill., 479., in the construction of a similar constitutional provision, the court say that it "is free from all doubt or uncertainty. The language is clear and explicit, and admits of but one meaning. It does not mean a majority of those voting on the question to be submitted, but a majority of all the legal voters of the county," and that the right to organize depends on an affirmative vote of such majority. *People v. Wiant*, 48 Ill., 266. *State v. Winkelmeier*, 35 Mo., 103. *County Seat of Linn County*, 15 Kansas, 530.

In *Bayard v. Klinge*, 16 Minn., 249, it is held that when the constitution provides that a question must be submitted to a vote of "the electors of the county," and requires "a majority of such electors voting thereon," it means a majority of the electors who vote at such election, and not merely of them voting on the particular question. It is, however, true that in California, Ohio, and Wisconsin a different rule of construction has been adopted; but when these courts attempt to apply to the construction of constitutions the rules which distinguish directory and mandatory statutes, they certainly tread on very dangerous ground, and as observed by an eminent jurist, although there may be "very strong motives for declaring the law to be what it is not," yet "it would have been interesting and useful if either of these learned courts had enumerated the evils that must be placed in the opposite scale when the question is whether

a constitutional rule shall be disregarded, not the least of which is the encouragement of a disposition on the part of legislative bodies to set aside constitutional restrictions, in the belief that if the unconstitutional law can once be put in force, and large interests enlisted under it, the courts will not venture to declare it void, but will submit to the usurpation, no matter how gross and daring." Cooley's Const. Lim., 73, note.

No doubt, as in the courts referred to, there will always be some plausible reason for latitudinarian construction. It may be urged on the ground that some real or supposed evil may be avoided, or some real or supposed good may be obtained. But will not yielding to such influences gradually undermine and finally overthrow the constitution? Indeed, if legislatures and courts may, under such rule of construction, "depart from what is plainly declared in the constitution, the people might well despair of ever being able to set any boundary to the powers of the government."

I think that section five, article X, of the constitution must be construed according to the plain meaning of the words used, and that the language employed therein is mandatory; and therefore, as the affirmative vote on the question submitted was less than a majority of all the legal voters, voting at the general election, the proposition to adopt township organization was defeated.

The second question raised by the answer is, whether the act is unconstitutional, inoperative, and void. The constitution declares that "no bill shall contain more than one subject, and the same shall be clearly expressed in the title." This provision is mandatory; and according to the whole current of authorities, it seems clear that it not only requires the purpose of the act to be correctly indicated by the title, but that it must control the effect and operation of the law, and exclude every thing which is not within the purpose indicated by the

title. It is, however, not the intent of the constitution that each subject of legislation shall be divided into separate acts so far as the subject is capable of division, but that the subject matter of each part or section of the law must be germane to the primary object of the bill, which is denominated by the constitution as the subject of the act.

Another principle in the interpretaion of a constitution is, that presumptions will always be in favor of the constitutionality of the law, when its object and provisions are within the acknowledged powers of the legislature; and therefore the power of the courts to declare a legislative act a nullity because it infringes on the constitution should be " exercised with extreme caution, and never when a serious doubt exists as to the true interpretation of the provision alleged to be repugnant." But the court is required to declare what the law is in the case which comes before it; and hence if the legislative department infringe the constitution in such case, the duty of the court, though it may be delicate and unpleasant, is a plain one, regardless of consequences. It is the duty of the court to regard the constitution, which is the fundamental law and superior to the ordinary act, and the constitution, and not such ordinary legislative act, must govern the case to which both apply. These general rules are deduced from the authorities, and seem to be well-established principles in the construction of statutory law; and with these in view, the act in question will be examined.

The title to the act is "*An act to provide for township organization.*" This title is very restrictive; it includes only township organization, and it will not be urged that the court can enlarge the scope of the title. On the contrary, it is said that " the constitution has made the title the conclusive index to the legislative intent as to what shall have operation," and as the legislature " may

make the title to an act as restrictive as they please, it is obvious that they may sometimes frame it as to preclude many matters from being included in the act which might with entire propriety have been embraced in one enactment with the matter indicated by the title, but which must be excluded because the title has been made unnecessarily restrictive." Cooley, Const. Lim., 149.

Now notwithstanding the very restrictive terms of the title to the act in question, yet it not only contains provisions in regard to township organization, but it also provides for county organization and defines its corporate powers; it determines the number of county officers, defines their duties, provides for their election, and limits the terms of their respective offices, and it also materially amends and changes the general revenue laws; and all these various subjects of legislation are contained in the body of the law, and are so intermixed and connected that all those portions of the act not embraced within or indicated by the title " cannot be rejected and leave a complete and sensible enactment which is capable of being executed." Indeed the second section of the act makes the whole law but one system, for it provides that the county voting in favor of township organization " shall be governed by and subject to the provisions of this act." In *Mewherter v. Price*, 11 Ind., 200, the title to an act was, " an act concerning promissory notes and bills of exchange," and the court say: " We have seen that the title to the act under consideration is limited to promissory notes and bills of exchange. Its language is very explicit, and we know of no rule of construction by which it can be extended as to embrace instruments of writing other than those which it expressly names." So in the case at bar, the title is limited merely to township organization, and there is no rule of construction by which it can be enlarged so as to embrace the other subjects contained in the law, and not expressed or fairly indicated in the title.

In *The State v. Perry Co.*, 5 Ohio St., 507, the law submitted the removal of the county seat to a vote of the electors of the county, but the act contained another subject, making the two dependent on each other. The court said in substance that the second subject, not indicated in the title, was such as would naturally influence the vote upon the adoption or rejection of the first, and would be a fraud upon the electors of the county to procure the adoption of the first by means of the second subject, and then declare it void. This would be allowing the second to accomplish its purpose, giving vitality and effect to the first, which without it would never have been adopted. The provisions of both are made equally to depend upon the result of the election; they were submitted by the legislature collectively to the voters of the county, and could only be passed upon *as a whole*, and they must stand or fall together, and therefore both parts of the act must be held to be unconstitutional. So in the case at bar, township and county organizations and a change in the general revenue laws are submitted by the legislature collectively to the voters of the county, and could only be passed upon as a whole, and therefore they must all fall together. However, the rule is not to be questioned, that when the part of an act which is clearly expressed by the title is not dependent on that which is unconstitutional, and is complete in itself and capable of being executed, it will be maintained; but where the different portions of the act form inseparable parts of the same system, and some portions are unconstitutional, the whole law is invalidated by the unconstitutionality of such parts. *Campan v. Detroit*, 14 Mich., 276. *Lathrop v. Mills*, 19 Cal., 513. *State v. Perry Co.*, 5 Ohio St., 497. *Oatman v. Bond*, 15 Wis., 20. *Reed v. Omnibus*, 33 Cal., 212. The act under consideration clearly comes within the latter rule, and therefore it must be held inoperative and void.

The case of *The Board of Supervisors v. Heenan*, 2 Minn., 339, which was very much relied on by counsel for relator, cannot be approved for several reasons. It is, however, only necessary to state that the decision of that case seems to rest mainly upon ": popular understanding" and " custom; " and also upon the theory that a " segment" of each township government will " aggregate and form the county government." This latter result certainly cannot follow in our state, for the county organization is separate from that of township, and none of the county officers constitute a " segment" of the township organization except the supervisors, in case township organization should be adopted as indicated by the act in question.

The writ of mandamus must be denied.

WRIT DENIED.