Minshalu, C. J.
The object of this proceeding is to compel the governor of the state to make proclamation of the adoption of an amendment to the constitution of the state, providing for biennial elections, submitted by the legislature to the electors of the state for their adoption or rejection at the last election for senators and representatives. The number of votes cast for its adoption was 257,662; the number of express votes cast for its rejection was 254,215; and the total number of electors voting at the election was 780,304. As will be seen, there were more votes cast for the ádoption of the amendment than were cast for its rejection, but the *690 number cast for its adoption was not a majority of all the votes cast at the election for senators and representatives — a majority of such votes would have been not less than 390,153.
The amendment having been submitted by the legislature, the question of its adoption or rejection must be determined by the provisions of section 1, article 16 of the constitution, which reads as follows :
“ Either branch of the general assembly may propose amendments to this constitution; and, if the same shalTbe agreed to-by three-fifths of the members elected to each house, such proposed amendments shall be entered on the journals, with the yeas and nays, and shall be published in at least one newspaper in each county of the state, where a newspaper is published, for six months preceeding the election for senators and representatives, for their approval or rejection ; and if a majority of the electors, voting at such election, shall adopt such amendments, the same shall become apart of the constitution. When more than one amendment shall be submitted at the-same time, they shall be so submitted as to enable the electors-to vote on each amendment separately.”
By this section an amendment submitted by the legislature must be published, as therein required, “ for six months preceding the next election for senators and representatives, at which time the same shall be submitted to the electors, for their approval or rejection; and if a majority of the electors, voting at such election shall adopt ” such amendment it shall become a part of the constitution.
The plain reading of this language would seem to indicate but one construction, and that is, that an amendment so submitted, would require for its adoption a majority of all the electors voting at the election for senators and representatives, as being the election indicated by the language “ such election.” Such seems to have been the view taken of it in the convention that framed the instrument, and such has been the uniform construction placed on it by the people of the state down to the present time. 2 Debates, Convention, 1851, p. 427. See also, 2 Debates, Convention, 1874, p. 2811. While the debates of a convention can have no controling effect upon *691 the construction of the provisions of a constitution, they are not without importance where they tend to support a construction indicated by the language of the instrument.
But, it is claimed, that “ the election for senators and representatives is simply given as fixing the time when the proposed amendment should be submitted to the people of the state for their approval or rejection, and that the act of approving or taking part in the approval or rejection of the proposed amendment, which the constitution says shall be done at the time of the election for senators and representatives, is an election in itself, and is the election referred to by the phraseology, “ a majority of the electors voting at such election.”
The framers of the constitution well understood the use of language.; and whatever views may be entertained of the policy of some of its provisions, it must be admitted that the instrument is a model of purity, precision and clearness of expression. In the next two sections of the same article, provisions are made for the submission of amendments, framed by conventions called for the purpose. And as to the adoption of amendments so framed and submitted, it is expressly provided, that “ no amendment of this constitution, agreed upon by any convention assembled in pursuance of this article, shall take effect, until the same has been submitted to the electors of the state, and adopted by a majority of those voting thereon.” Sec. 3, Art. 16, Con. If then it was intended that a majority of those voting on an amendment, submitted by the legisláture, should be sufficient to adopt it, the question arises, why language equally clear and explicit was not adopted to express such intention in the one ease as well as in the other; or why, instead of limiting the provision contained in section 3 to amendments “ agreed upon by any convention,” it was not extended so as to include an amendment submitted by any legislature. It would have been natural, and it is probable, that if the framers had had the same intention in framing section 1 as in framing section 3, as to how the majority for the adoption of an amendment should be ascertained, they would have provided in that section as in section 3, that it should be *692 a majority “of those voting thereon” instead of a majority “ of the electors voting at such election.” Such a plain difference of language iudicates a plain difference of intention.
But the difference in the language employed, is no greater than is the difference in the two cases to which the minds of the framers were directed. No doubt but that stability in its provisions was, as should always be the case, a consideration that influenced the minds of the framers of the constitution in providing for .its amendment. Two distinct modes of originating and submitting amendments are provided for; in one it may be done by the legislature, in the other by a convention. Amendments submitted through the agency of a convention are necessarily attended with more deliberation and discussion, than are those submitted by the legislature. Amendments may be submitted by the legislature as often as once in every two years. Hence there is much reason for the provision, contained in section 1, that requires for the adoption of an amendment submitted by the legislature, a majority of all the electors voting at the election at which it is submitted. If it were otherwise, there would be but little, if any, more stability to the constitution, than there is to the statutes of the state. It could, and probably would, be changed every two years.
The argument of the counsel for the relator has the merit of ingenuity. He dissolves a general election into as many distinct elections as there are offices to be filled and questions voted on, at the time it is held. He then utilizes the adverbial phrase, “ at which time,” so as to make it designate, not the time of a general election, but the time of a number of distinct elections, among which will be, where such are submitted, elections for constitutional amendments; and thence infers that the language “ voting at such election,” used in sec. 1, means the election upon constitutional amendments.
Such acute criticism upon language would defeat the plain, manifest intention of any instrument, however' carefully prepared. We are satisfied beyond a doubt that the construction claimed, is not the meaning of the language used in section 1 of article 16 of the constitution.
*693 But one of the most obvious objections to this construction, is, that it requir.es to be demonstrated by such a labored process of occult reasoning upon the meaning of words and phrases, so different from the apparent meaning, as to warrant the belief that it never occurred, either to the framers of the constitution, or to the people who adopted it. So that, upon settled rules of construction, it should be rejected, if it could be shown to be in accordance with the strict grammar of the language and meaning of the words employed.
But even this cannot be claimed for the construction of the relator. The grammar of the language is against it. “ Such,” as here used, is a pronominal adjective, and necessarily defines an “ election ” previously mentioned; and the only one found in the context is an “ election for senators and representatives.” The construction of the relator requires for its adoption, the insertion of words, descriptive of an election, neither found in the section, nor required to be supplied by any rule of grammar, in order to complete the fullness of expression.
Counsel for the respondent has collected a great many cases bearing upon the question, some of which directly, and most of them by analogy, support the construction for which he contends. But as that construction is, to our minds, so clearly in harmony with the language of the instrument, and that which long years of common consent has placed on it, it is hardly necessary to do more than cite a few of them. State v. Smith, 69 Ind. 505; State ex rel. v. County Commissioners, 6 Neb. 474; State ex rel. v. Babcock, Auditor, 17 Neb. 188; State ex rel. v. Brown, 11 Ill. 478 ; State ex rel. v. Wheaton, 48 Ill. 263; Enyart v. Hanover Township, 25 Ohio St. 618; McCreary on Elections, 174.
In the case of Gillespie v. Palmer, 20 Wis. 544, much relied on by counsel for the relator, the judgment of the court was placed, principally, upon the language applicable to that case, and which, as there construed, is substantially different from the language contained in section 1, of article 16 of our constitution. There the language construed was, *694 “ a majority of all the votes cast at such election.” The court, holding, that “ votes” is not synonymous with voters, determined that-a majority of all the votes cast on the subject was sufficient to adopfrthe amendment. But no such question can arise under our constitution on the meaning of words, the language being, “a majority of all the eleotors voting at such election.” While “electors” may not be the exact synonym of voters, it is in no sense synonymous with votes. So that, if the decision were a sound one, it would not be in point here, by reason of the difference in the language of the two provisions. But the case does not seem to be regarded with very great favor in the state where it was decided. See Bound v. Railroad Co., 45 Wis. 479.

Writ refused and petition dismissed.