**1860]** . **WISCONSIN REPORTS.** **27**

State ex rel. Field vs. Saxton et al.

## STATE ex rel. FIELD *vs.* SAXTON et al.

ALTERNATIVE WRIT OF MANDAMUS.

Heard February 24, 1860.]                    [Decided February 28, 1860.

*Mandamus—Practice—County Seat.*

Action by writ of mandamus is the proper remedy to compel a sheriff to keep his office at the county seat.

In an answer to an alternative writ of mandamus, the sheriff may set up that the county seat has not been removed from one place to another, by a vote of the people; or any other proper defense he may have to the action. And this is a proper method of testing the validity of an election to remove the county seat.

This was a writ of mandamus issued to Larman E. Saxton, sheriff of the county of Juneau, to compel him to keep his office at the village of Mauston. The writ averred that the county seat of Juneau had been removed from New Lisbon, the former county seat, to Mauston, by an act entitled " an act to provide for the removal of the county seat of Juneau county." Approved February 21, 1859. That on the 15th of November, 1859, two of the county canvassers returned that the whole number of votes cast on the subject of the removal was, 2,542, of which number there were for removal to Mauston 1,022, and against removal to Mauston 1,520. The other canvasser objected to the canvass, for the reason that the return from the town of Lisbon shows the pretended vote of that town to be fraudulent, several hundred more votes being returned than there are voters therein. The writ then averred that the votes for the state ticket were 332, and that a portion of these were illegal, having been cast by minors; and the vote against such removal cast at the town of Lisbon, as returned, was at least 560, more than were in fact cast by the legal voters at that place. The poll list was then given at length, showing that at one interval 198 votes are cast on the question of removal of the county seat, and none of them were for state officers; and the same number were cast on same question, in another part of the return; and there were also several other intervals amounting to 148 votes, and amounting in the whole to 544 votes; that none of these

State ex rel. Field vs. Saxton et al.

were authorized to vote at that election. That many illegal votes were returned and canvassed from other towns. That there were not at the town of Lisbon, at that time, more than 300 legal voters, and there had not before been cast at that place more than 236 votes. That the poll list contained the names of at least 560 persons, as voting upon the removal of the county seat, who were not entitled to vote at the election at the town of Lisbon. That there was a majority of the legal · votes cast in the county, in favor of the removal of the county seat, of at least sixty-two; and that a demand had been made upon the respondent to hold his office at the county seat, as required by law, and that he had neglected and refused to do so.

The writ then averred that there were proper and suitable rooms at Mauston for the county offices, and also for holding the terms of the court; and denied that there were county buildings at Lisbon.

A motion was made by the respondent to quash the writ, and assigned the following reasons: 1. The relation does not disclose or state any right of the relator to demand the relief prayed for in the relation. 2. It appears in the relation that the county seat of Juneau county is fixed and located at New Lisbon. 3. The law makes it the duty of the sheriff to keep and hold his office at the county seat, the place designated by law. 4. The writ of mandamus can only be issued to enforce a right and compel the performance of a duty created and imposed by law.

· *H. A. Saunders* and *S. Crawford*, for the respondent, discussed the points noticed in the motion, but only the following will be noticed as important to this case:

The proceeding by mandamus in a case like the one at bar, should not be entertained by the court. There is another and distinct remedy provided by law, by an action against the sheriff for the penalty for not holding his office at the county seat, in which the sheriff could set up the facts, and claim by the record in the clerk's office, that the county seat was at New Lisbon; and a replication to that answer would present the issue of where the county seat was. The respondent as a ministerial officer could not inquire into the action of the canvassers, nor will the court by mandamus go behind the certificate of the canvassers. 5 Hill, 616 ; 4 Cow., 297 ; 8 id., 102 ; 17 Wend., 81; 20 id., 12 ; 3 Hill, 43 ; 6 Mass., 462 ; 2 Chand., 247 ; 6 T. R., 168 ; 1 Cow., 423 ; 12 John., 415.

The act of February 17, 1859, authorizing or providing for an election on the question of the location of the county seat of Juneau county, is unconstitutional and inoperative. Constitution, Art. XIII, § 8 ; *In re County Seat of La Fayette,* 2 Chand., 212.

*J. H. Knowlton,* for the relator.

*By the Court,* COLE, J. The motion made in this case by the respondent, to quash the alternative writ, must be denied. Proceedings by a writ of mandamus is the proper remedy to compel a sheriff, or other county officer, to keep his office at the county seat. In answer to such an action commenced by an alternative writ, the respondent may set up as a defense, that the county seat has not been removed from one place to another, by a vote of the people ; or any other proper defense which he may have to the action. There is no more proper manner to test the validity of an election to remove a county seat, than by proceedings in mandamus. It is the remedy which has frequently been pursued in this state.

The respondent may have leave to file an answer within three days.