THE FIRST NATIONAL BANK OF TOPEKA v. DAVID H. HEFLEBOWER, *as State Treasurer.*

**No. 10881.**

MANDAMUS — *State Treasurer will not be compelled by, to register and pay orders drawn by School Fund Commissioners to pay for bonds purchased at more than market price.* The State Treasurer will not be compelled by mandamus to register and pay orders drawn on the permanent school fund by the State School Fund Commissioners to pay for bonds purchased by them, where it appears that the price agreed to be paid is more than the actual market price thereof at the time of the purchase, even though the excess above the market price be so small that the purchase cannot be declared an improvident one.

Original proceeding in mandamus.   Opinion filed December 11, 1897.   *Writ denied.*

*Rossington, Smith & Dallas*, for plaintiff.

*G. C. Clemens*, for defendant.

ALLEN, J.   The Commissioners of the Public School Fund drew on the defendant, as State Treasurer, orders for ten thousand dollars, payable out of the permanent school fund, in favor of the plaintiff, to pay for certain refunding bonds of Graham County, which the Commissioners had agreed to purchase. These

orders were presented to the State Treasurer to be registered, as required by paragraph 6658 of the General Statutes of 1889. Orders were also drawn for the interest which had accrued on said bonds to the date of sale. The Treasurer refused to register the orders. This proceeding is brought to compel such registration and the payment to the plaintiff of the amount of the orders by the Treasurer out of the proper funds. Various matters of defense are stated in the return of the Treasurer to the alternative writ of mandamus. The case was tried in this court, on oral and documentary evidence, at the October session.

It appears without dispute that $3,000 of the bonds were sent to the plaintiff by M. W. Harris & Co., of New York, with a draft on W. W. Speer for $3,038.33; and that $7,000 of the bonds were sent by the Webster National Bank of Boston, with a draft on the same person for $7,153.33. The School Fund Commissioners, after an inspection of the bonds, accepted the offer made by Speer and agreed to purchase them at their face value with accrued interest. They were thereupon presented to the Auditor of State for registration and were registered by him, and the words "The property of, and payable to, the permanent school fund of the State of Kansas, and not negotiable or transferable" were stamped on them over the signature of the Auditor. The bonds so stamped were presented to and left with the defendant. The plaintiff is not the owner of the bonds, and did not negotiate the sale of them to the School Fund Commissioners, but they were sent to it by the holders, for delivery, and return of the proceeds. Neither the School Fund Commissioners nor the owners of the bonds are parties to this action.

The question is raised as to the right of the plaintiff to maintain the action, even though the duty of the

Treasurer to comply with the demand be clear; but we prefer to dispose of the case on another ground, without expressing any opinion on this question.

The courts never compel a public officer to carry out a contract, or transaction, which in any essential particular violates a statute. *Supervisors v. The Township of Mentor*, 94 Mich. 386 ; *The State, ex rel. O'Hara, v. Fagan*, 56 N. J. L. 279. "The court being vested with some discretion will not issue a writ of mandamus, except where it seems to be necessary and proper to accomplish the ends of justice." *Arends v. City of Kansas City*, 57 Kan. 350. Referring to such purchases of bonds, it is provided in paragraph 6654 of the General Statutes of 1889, as follows:

"In making such investment they shall give preference to the bonds of the State of Kansas, school-district bonds, and refunding bonds, when the same can be procured most advantageously to the said funds ; but they shall not pay for any State, school-district or refunding bonds in any case a greater sum than the par value of the same, nor shall they pay for any such bonds any greater sum than the actual market price thereof at the time of purchasing the same."

These bonds were purchased at par. The testimony offered at the trial shows that they were not worth par in the market at the time of the purchase. The testimony of Mr. Speer, on behalf of the plaintiff, was to the effect that refunding bonds of Graham County had been sold a number of years ago at a premium, but the last sale, testified to by him, at par or more, was in 1890. It is conceded that in this very transaction the owners of the bonds were to part with them for about ninety-eight cents on the dollar; the balance of the purchase price going to the broker, Speer, who purchased them for resale to the School Fund Commissioners. He invested nothing in the first instance, the bonds being sent to the plaintiff

Bank to receive the whole proceeds and remit to the owners the amounts they were to receive.   Mr. Bonebrake, called as a witness for the defendant, testified to an offer to sell other like bonds of the same county at ninety-seven and one-half cents on the dollar, which he declined.   Both he and Mr. Mulvane testified that the bonds were not worth par on the market.   Even Mr. Speer, the only witness for the plaintiff, failed to state that the bonds were worth par on the market, but said that he regarded a purchase at that price as a courageous, but also a judicious one.   It will be perceived that the margin between the market value of these bonds and par is not great.   If the question to be determined were whether this is an improvident and injudicious investment, it could not be said that the showing made is sufficient to so declare it.   But the statute quoted is plain and explicit that the Commissioners shall not pay for any bonds any greater sum than the actual market price thereof at the time of purchasing the same.   All the evidence shows that they did pay slightly· more than the actual market price.

The argument based on the premise that Topeka is not a market for bonds, but that such market is in the East, is without force, in view of the fact that the holders of these bonds, in New York and Boston, are content to take ninety-eight cents on the dollar for them.   If they were worth more in those markets, it is hardly probable that they would be sent here for re-sale at a discount.   We have no evidence that the bonds are of any greater value in any other market than in Topeka.

The Treasurer cannot be compelled by mandamus to perform any act necessary to carry out this contract; not because he is vested with authority to supervise the action of the Board of School Fund

Commissioners, but because the statute says that such a contract shall not be made as the evidence introduced on the trial shows this one to have been. We do not know upon what information as to the market value of the bonds the Commissioners acted. There is nothing in the transaction indicating bad faith on their part or a purpose to disregard the law. Nor is the showing with reference to the value of the bonds such as would have warranted us in refusing the writ on the ground that the purchase is an improvident or undesirable one.

Much stress is laid by counsel for the plaintiff on the fact that the bonds have been stamped by the Auditor as the property of the State. Certainly the Auditor has no power to bind the State to any contract for the purchase of bonds by the use of this stamp. Nor do we think, as a matter of law, his action in stamping the bonds can be held to have any effect on the rights of the parties. The plaintiff, as agent for the holder of the bonds, has the undoubted right to have the bonds returned to it by the defendant, and also to cancel the indorsement placed on them. This indorsement in no manner changes the title to them, and ought not to discredit them in the market. The Auditor may, if he sees fit, cancel the indorsement, and state that it was placed thereon by mistake. The bonds will still be negotiable to the same extent they were before such indorsement was made. They are the obligations of the county, and of the same actual value as securities that they were before any attempt was made to negotiate them. It may be that within a very brief time the market for such securities will advance so that these very bonds will be worth more than par; but this case must be decided on the evidence as to their market value at the time of their

purchase, and under it the plaintiff is not entitled to the relief demanded.

Judgment will be rendered in favor of the defendant for costs.