SHEARER *v.* BOARD OF SUPERVISORS OF BAY COUNTY.

1. CONSTITUTIONAL LAW — TITLE TO ACT — HIGHWAYS — COUNTY AND TOWNSHIP SYSTEM.

   Act No. 149, Pub. Acts 1893 (2 Comp. Laws, § 4262 *et seq.*), entitled "An act to provide for a county and township system of roads, and to prescribe the powers and duties of the officers having the charge thereof," and providing in what cases the county shall assume control of the highways, and in what cases they shall remain within the jurisdiction of the townships, is not obnoxious to section 20, art. 4, of the Constitution, declaring that no law shall embrace more than one object, which shall be expressed in its title.

2. COUNTY ROAD SYSTEM—ADOPTION—VOTE OF ELECTORS.

   Under section 49, art. 4, of the Constitution, providing that the county road system shall become operative only in such counties as shall adopt it by a majority vote of the electors of said county, a majority of the votes cast at the election is sufficient for the adoption thereof.

3. SAME—BONDS—VALIDITY—CURATIVE LEGISLATION.

   Section 49, art. 4, of the Constitution, provides that no county shall issue any bonds for county roads except on a two thirds

vote of the supervisors elect, and on approval by a majority vote at any election. A vote of the electors in favor of an issue of bonds was invalid, in that the bonds were to run for 30 years, whereas by section 2484, subd. 8, 1 Comp. Laws, all county bonds are limited to a period of 15 years. *Held,* that the proceedings could not be validated by a subsequent curative act, so as to authorize the issue of the bonds.

Appeal from Bay; Shepard, J. Submitted October 10, 1901. Decided November 4, 1901.

Bill by G. Henry Shearer and others against the board of supervisors of Bay county and others to restrain the issue of certain bonds. From a decree dismissing the bill, complainants appeal. Reversed.

*E. A. Cooley (J. L. Stoddard,* of counsel), for complainants.

*E. E. Anneke,* Prosecuting Attorney ( *U. R. Loranger,* of counsel), for defendants.

MONTGOMERY, C. J. The bill in this case was filed by a number of taxpayers of the county to restrain the issue of $100,000 of bonds for the purpose of extending the county road system. The bill alleges that the levy of the tax on the property of complainants to meet the bond issue would exceed $100, and that the amount levied upon the property of several of the complainants individually would exceed $100. Under the amended pleadings, two questions are presented: *First,* whether the county road system was legally adopted in Bay county; and, *second,* whether the issue of the $100,000 of bonds in question was lawfully authorized by a vote of the electors, and, if not, whether the curative act of the legislature has remedied the defects.

Section 49 of article 4 of the Constitution provides that the county road system shall become operative only in such counties as shall adopt it by a majority vote of the electors of said county, after said question has been submitted to

them by a two-thirds vote of all the members-elect of the board of supervisors, at a general or special election called for that purpose.    Following the adoption of this constitutional amendment, the legislature of 1893 passed Act No. 149, to provide for a county and township system of roads. 2 Comp. Laws, § 4262 *et seq.*    It is contended that this is obnoxious to section 20, art. 4, of the Constitution, which provides that no law shall embrace more than one object, which shall be expressed in its title.    We think the act is not open to the objection raised.    The general purpose of the act is to provide for a system of highways, and, in its details, it provides in what cases the county shall assume control of them, and in what cases they shall remain in the jurisdiction of the township authorities.    The case of *Davies* v. *Saginaw Co. Sup'rs,* 89 Mich. 295 (50 N. W. 862), presented no such question.    It was there held that certain provisions of the act under consideration were not within the purview of the title.    Such cannot be said of the present act, as all of its provisions come within the scope of the general title.

It is further insisted that the vote by which it was determined by the electors of the county of Bay to adopt the county road system was never legally adopted, for the reason that a majority of all the electors in the county did not vote affirmatively upon the proposition.    It does appear that a majority of all those who availed themselves of the opportunity to vote, voted affirmatively; and the question presented is whether, under the language of the Constitution above quoted, a majority of the votes cast at the election is sufficient.    As was said by Mr. Justice GRANT in *Stebbins* v. *Judge of Superior Court,* 108 Mich. 695 (66 N. W. 594), the authorities which bear upon this question are very numerous, and not in harmony. But the determination, as a rule, depends upon the peculiar language of the constitutional provision or of the statute which submits to a vote of the people the question to be determined.    The purpose in every case must be to ascertain the intent of the enactment.    Thus, in

*Stebbins* v. *Judge of Superior Court*, above cited, the court construed a provision requiring an affirmative vote of the "qualified electors," "by a majority of their votes cast at any regular election, or at a special election," and held that a majority of the votes cast upon the *particular proposition* in question was not sufficient.   In so holding we distinguished cases which we think presented substantially the question involved in this case.   In that case it will be noted there was a ready means of determining, in case of a general election, what voters availed themselves of the opportunity of voting at the election.   But in the present case there is no machinery provided, and the result could never be definitely ascertained, if the construction contended for by complainants is to prevail, until an investigation *aliunde* the record.   In many cases this consideration has been deemed a controlling one in determining the intent of the lawmakers.   It is true that in North Carolina a provision requiring a vote of "a majority of the qualified voters · therein" was construed to mean voters who had, previous to the election, qualified themselves, and had their competency to vote determined by a board of registration.   *McDowell* v. *Construction Co.*, 96 N. C. 514, 530 (2 S. E. 351).   The very language of the provision of our Constitution repels such a construction.   In McCrary, Elect. § 208, it is laid down that:

" Where a statute requires a question to be decided or an officer to be chosen by the votes of 'a majority of the voters of a county,' this does not require that a majority of all persons in the county entitled to vote shall actually vote affirmatively, but only that the result shall be decided by the majority of the votes cast.   *   *   *   In such a case, the only proper test of the number of persons entitled to vote is the result of the election, as determined by the ballot-box, and the courts will not go outside of that to inquire whether there were other  persons entitled to vote, who did not do so.   The 'voters of the county,' referred to by all such statutes, are necessarily the voters who vote at the election, since the result in each case must be determined by a count of the ballots cast, and not by an inquiry as to the number not cast."

This view has the support of the Supreme Court of the United States in an opinion by Mr. Justice Matthews. *County of Carroll* v. *Smith,* 111 U. S. 556 (4 Sup. Ct. 539), at page 565. See, also, *State* v. *Grace,* 20 Or. 154 (25 Pac. 382); *Walker* v. *Oswald,* 68 Md. 146 (11 Atl. 711); *Yesler* v. *City of Seattle,* 1 Wash. 310 (25 Pac. 1014); *Metcalfe* v. *City of Seattle,* 1 Wash. 297 (25 Pac. 1010); *State* v. *Renick,* 37 Mo. 270. In our opinion, the county road system was properly and legally adopted in Bay county.

The next question is whether the bonds in question were properly authorized by a vote of the electors. The same section of the Constitution provides that no county shall incur any indebtedness or issue any bonds for the construction or maintenance of county roads, except upon a vote of two-thirds of all the supervisors elected, and then to be approved by a majority vote at any general or special election. Acting under this constitutional provision, the legislature, in the act above referred to, authorized the issue of bonds to raise money for the construction of roads, upon a vote of the electors of the county. 2 Comp. Laws, § 4283. The board of supervisors of Bay county, assuming to act under this authority, submitted to the electors the proposition of issuing bonds to run for a period of 30 years. Under the statute, the bonds could only be made payable within 15 years. 1 Comp. Laws, § 2484; *McMullen* v. *Ingham Circuit Judge,* 102 Mich. 608 (61 N. W. 260); *Board of Sup'rs of Alpena Co.* v. *Simmons,* 104 Mich. 305 (62 N. W. 292). It is also contended that irregularities occurred in the notice of the election and in the manner of taking the vote.

It appears to be conceded by defendants that these bonds cannot legally be issued unless the curative act shall be upheld. Act No. 286, Local Acts 1901. This act was passed on February 20, 1901, and, after reciting the action taken in submitting the question to the electors, enacts that the board of supervisors is authorized to issue the bonds of the county in the sum of $100,000, and that the

bonds shall become due and payable 30 years from their date, and bear interest at $3\frac{1}{2}$ per cent., as provided in the original proposition.

The rule as to what may properly be done by a curative act is clearly stated in Cooley, Const. Lim. (6th Ed.) p. 457:

"If the thing wanting, or which failed to be done, and which constitutes the defect in the proceedings, is some-thing the necessity for which the legislature might have dispensed with by prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statute; and if the irregularity consists in doing some act, or in the mode or manner of doing some act, which the legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law."

It is urged by defendants' counsel that the curative act in question is within the rule; for, it is said, with great appearance of plausibility, the legislature might have provided in the first instance for submitting the question to the electors of issuing bonds running for a period of 30 years, and, as the legislature might have so provided in the first instance, it may now, by a curative act, validate the action taken.

We think there is a fallacy in this position. At the time when this vote was taken, it must be conceded that there was no power to issue bonds running for a longer period than 15 years. There was no existing authority at that time, on the part of the board of supervisors, to submit the proposition which it proposed to the electors. In view of the constitutional provision above quoted, the legislature had no power to dispense with a vote of the people upon the question. We have, then, a case where, when the question was submitted to the people, every elector had the right to assume that no action which might be taken would be valid, as the proposition submitted was, by the express terms of the statute, nugatory. It is evident that many refrained from voting, whether for this reason does not appear, but it is not a violent assumption

to infer that they treated the attempt at an election as abortive. It is not a case where the legislature might have dispensed with the necessity of any election whatever, as was true in many of the cases cited, but, under the Constitution, the electors had a right to have submitted to them an authorized proposition. The vote of the board of supervisors, submitting the question, was in itself unauthorized, and the electors had the right to so treat it. It cannot be said, therefore, that the electors have had the opportunity contemplated by the Constitution to vote upon the question of issuing these bonds.

In some of the cases cited by defendants' counsel there was a subsequent vote of the people provided for by the curative act. This is true of the following cases: *Booth* v. *Town of Woodbury*, 32 Conn. 118; *Baldwin* v. *Town of North Branford*, 32 Conn. 47; *City of Bridgeport* v. *Railroad Co.*, 15 Conn. 475. In *Bartholomew* v. *Town of Harwinton*, 33 Conn. 408, it was said:

"The law is unquestionably retroactive and absolute. But it is not contrary to any constitutional prohibition, nor, in our opinion, so unjust as to violate the principles of the social compact."

It will be seen that in that case the court would, in order to hold the act unconstitutional, have had to imply a constitutional provision prohibiting the legislature from foisting debts upon municipalities without their consent, while, in the present case, the question is whether a vote of the electors, invalid at the time it was taken, can, by a subsequent act of the legislature, be validated, when, under the Constitution, no legislative authority to incur the debt could be given effect without a vote of the electors. The same is substantially true of *County of Otoe* v. *Baldwin*, 111 U. S. 1 (4 Sup. Ct. 265), where it was held that the legislature had the power to authorize the issue of the bonds with or without a popular vote. So, in the case of *Single* v. *Marathon Co. Sup'rs*, 38 Wis. 363, no popular vote was had at any stage of the proceedings, and the court held that none was necessary. In *Grim* v. *School*

*District*, 57 Pa. St. 433 (98 Am. Dec. 237), an act was held good validating bounty taxes assessed by a township at a public meeting.   There was in that case an antecedent vote of a majority of the citizens of the township.   In *Schofield* v. *Watkins*, 22 Ill. 66, where the court hold valid an act legalizing the acts of officers in attempting to form a school district, the court say: "There can be no doubt that the legislature have the power to form a school district." *In re Sackett St.*, 74 N. Y. 95, is a case where public improvements had been made and paid for by the municipality.   It was said that "the legislature can adopt and sanction an improvement or an expenditure which it could previously authorize."   In *City of Lowell* v. *Oliver*, 8 Allen, 247, the question was whether the State could reimburse cities and towns for bounties paid to volunteers, thus ratifying their action; and it was held that it could.   In *Comer* v. *Folsom*, 13 Minn. 219, it was said that it was competent for the legislature to give bounties, "and to tax the citizens generally therefor; and, if it had the power, it had the right to delegate it to the several towns or counties."   It is apparent, therefore, that the legislature was restricted by no constitutional provision as to the manner in which the municipalities should assent to such action.

We have found no case which deals with the precise question here involved.   The two cases most nearly approaching the one in question are, perhaps, *Hasbrouck* v. *City of Milwaukee*, 13 Wis. 37 (80 Am. Dec. 718), and *Marshall* v. *Silliman*, 61 Ill. 218.   In *Hasbrouck* v. *City of Milwaukee* there was legislative authority for the city to incur an obligation to the amount of $100,000 for the improvement of the harbor.   A contract for expending a much larger sum was entered into.   An enabling act was afterwards passed, and it was contended that, from and after the passage of such enabling act, the agreement for the excess became valid and binding upon the city.   The court, in an opinion by Chief Justice Dixon, state the question to be:

"Can the legislature, by recognizing the existence of a previously void contract, and authorizing its discharge by the city, or in any other way, coerce the city, against its will, into a performance of it, or does the law require the assent of the city, as well as of the legislature, in order to make the obligation binding and efficacious?"

His decision of the question is that "the latter act [that is, the assent of the city], as well as the former [the legislative act], is necessary for that purpose, and without it the obligation cannot be enforced."

It may be urged in the present case that the county, through its board of supervisors, by the issue of the bonds in question, might be said to assent to the legislative act. But the answer to that is that the Constitution prescribes the manner in which assent to incurring such an obligation as is sought to be created may be given, namely, by a vote of the electors.

In *Marshall* v. *Silliman* the electors of the township, at a regularly called meeting, had voted in favor of creating a debt of $15,000. There was no law authorizing the creation of this debt in existence at the time. A subsequent curative act was passed. It was said:

"It cannot be said that the town has ever consented to the creation of this debt. The so-called 'vote' was an idle form. Persons opposed to the subscription were under no necessity or obligation to vote against it, because they had a right to regard the entire proceeding as a nullity. The vote can no more be accepted as the action of the town, or as giving the consent of the town to the creation of this debt, than would a resolution adopted by the same number of persons at one of their dwellings, or in a casual encounter at a street corner. Neither can the subsequent issue of the bonds be taken as showing the assent of the town. That was the mere ministerial act of the supervisor and clerk, performed in obedience to the act of the legislature."

It is further said:

"The town supervisor and clerk, who issued these bonds, do not represent a township, as the board of trustees represent an incorporated town, or the common council

represent a city. The supervisor and town clerk are but a part of the corporate authorities."

The conclusion was that the curative act was invalid.

The reasoning of the court in the case last cited is peculiarly applicable to the present. In this case, as in that, the attempted vote authorizing these bonds was a nullity. It was not within the power of the legislature to authorize the county authorities to issue these bonds, and thus create an indebtedness against the county, without a vote of the electors. The Constitution stands in the way. If the legislature could not, in the first instance, do this, the wholly unauthorized vote of as many of the electors as chose to take part in a proceeding not authorized by law cannot be held to fulfill the requirements of the Constitution.

We distinctly limit this holding to a case where, as in the present, the proposition itself upon which the vote is cast is one upon which the voters at the time had no legal authority to pass. We do not determine that any irregularity in the election, or even want of the statutory notice, would so far render the proceedings invalid that they might not be validated by legislation. We leave that question for determination when a decision upon it shall be required. But, for the reasons pointed out, we hold that in this case the curative act was beyond the power of the legislature.

It follows that the decree dismissing the bill must be reversed, and an injunction will issue in accordance with the prayer of the bill.

HOOKER, MOORE, and LONG, JJ., concurred. GRANT, J., did not sit.