Submitted on briefs January 4, reversed January 12, 1915.

## STATE ex rel. v. KAY, State Treasurer.

(145 Pac. 277.)

**Mandamus—Petition—Informality—Waiver.**

1.  Failure of the county attorney to sign in his official capacity the petition filed by him in *mandamus* proceedings instituted under instructions from the state land board was a mere informality, which, under the express provisions of Section 72, L. O. L., was waived when defendant answered to the merits.

**Mandamus—When Allowed—Party in Interest—State Officers.**

2.  Under Section 614, L. O. L., providing that the writ of *mandamus* shall be allowed on the petition of the party beneficially interested, *mandamus* proceedings may be instituted by the state, on the relation of the Governor and Secretary of State, who constitute a majority of the members of the state land board, to compel the State Treasurer to surrender to such board funds and records to which it may be entitled; the people of the state in their collective capacity constituting the real party in interest.

**States—Funds and Records—Right to Custody—State Land Board—
State Treasurer.**

3.  Under Laws of 1855–56, page 70, Sections 8, 9, 10, giving the territorial treasurer control of school funds, which statute was continued in force by Article XVIII, Section 7, of the Constitution, until altered or repealed, and in view of the fact that such statute was not annulled by Article VIII, Section 5, of the Constitution, prescribing the powers and duties of the commissioners for the sale of school and University lands and investment of the proceeds, and has not been changed by the subsequent legislation relative to the state land board (Sections 3882, 3883, 3886, L. O. L.; Section 3296, B. & C. Comp.; Laws 1913, p. 499), or the provisions relative to the powers and duties of the State Treasurer (Article VI, Section 4, of the Constitution; Sections 2636–2638, 2654, 2658, L. O. L.), the right to custody of notes and mortgages taken by the state land board on loans of the common or irreducible school fund, university fund, and Agricultural College fund of the state, and the records, books and papers used in connection therewith, is vested in the State Treasurer, rather than in the state land board.                ●

**Mandamus—Right to Remedy—Performance of Official Duty.**

4.  While, under the express provisions of Section 613, L. O. L., a writ of *mandamus* may issue to compel the State Treasurer to perform an act which the law specifically enjoins, it will not issue, unless the duty sought to be enforced is legally defined.

[As to *mandamus* against public officers, see note in 98 Am. St. Rep. 863.]

## From Marion: William Galloway, Judge.

In Banc.    Statement by MR. JUSTICE BEAN.

This is a proceeding in *mandamus* by the State of Oregon, on the relation of Oswald West, Governor, and Ben W. Olcott, Secretary of State, to compel the defendant, T. B. Kay, State Treasurer, to surrender to the clerk of the state land board the notes and mortgages taken by the board upon loans of the common or irreducible school fund, University fund, and Agricultural College fund of the state, aggregating $5,992,-758.71, and the records, books and papers used in connection therewith.    The Circuit Court granted a peremptory writ of *mandamus* as petitioned for, and the defendant appeals.

The action is brought upon the relation of Oswald West, Governor, and Ben W. Olcott, Secretary of State. The alternative writ shows, in substance, that the relators are the Governor and Secretary of State, respectively, of the State of Oregon, and are citizens and taxpayers thereof; that the defendant is the State Treasurer, and that the relators and the defendant comprise the state land board, of which G. G. Brown is clerk; that the state land board has loaned from the common or irreducible school fund, University fund, and Agricultural College fund of the state, in various amounts, the total sum of $5,992,758.71, which loans are evidenced by the promissory notes of the respective borrowers, aggregating approximately 8,000 in number, payable to said board, and are secured by mortgages on Oregon real estate; that said notes are not due; that at a regular meeting of the board held at the capitol November 13, 1913, the board directed the defendant to deliver the notes and mortgages, and all records, books and papers used in connection therewith and belonging to the board, to G. G. Brown,

clerk; that on that date, and at all times since, defendant has had said notes, mortgages, records, books and papers in his possession in Marion County, Oregon; that said clerk, acting for himself and on behalf of the board, made due demand of the defendant for possession of the above-mentioned instruments and papers, and is entitled to the immediate possession thereof, but that the defendant refused to comply with such demand.

The defendant first moved to dismiss the writ for the reasons: (1) That the same shows on its face that the State of Oregon has no interest in the result; (2) that the writ fails to show that the relators have any right to prosecute the action in the name of the State of Oregon. The motion being overruled, the defendant demurred upon the grounds: (1) That the plaintiff has no legal capacity to sue; (2) that there is a defect of the parties plaintiff; (3) that the complaint does not state facts sufficient to constitute a cause of action; and (4) that the court has no jurisdiction of the subject matter. The trial court overruled the demurrer. The defendant answered, admitting, in effect, the material allegations contained in the alternative writ, and alleging that the defendant has the possession of the notes, mortgages and records, as such treasurer and member of the state land board in his official capacity only, in the performance of his duties as required by law. The defendant further alleges that for more than 30 years last past the respective State Treasurers of the state have had the actual possession of the notes and securities mentioned in the writ, and that such has become and is the actual custom of the administration, care and possession of the same; that the Treasurer holds them subject to the order of the state land board in relation to loaning the moneys, col-

lecting the interest on the notes, paying out all moneys and interest received on the notes and securities and loaning the principal sum as directed by the board; that the various legislatures of the state during the last 30 years, and prior thereto, have appropriated money at different times for the purpose of employing additional help in the State Treasurer's office to collect interest on the securities; that it would entail an expense of about $2,000 to change the custom and make the proposed transfer; that the State Treasurer is under $350,000 bonds to protect the state against loss of any such funds, interest or securities.

Submitted on briefs without argument under the proviso of Supreme Court Rule 18: 56 Or. 622 (117 Pac. xi).                                REVERSED.

For appellant there was a brief submitted over the names of *Mr. Andrew M. Crawford,* Attorney General, and *Mr. James W. Crawford,* Assistant Attorney General.

For petitioner and respondent there was a brief over the names of *Mr. Ernest R. Ringo,* District Attorney, and *Mr. Isaac H. Van Winkle.*

MR. JUSTICE BEAN delivered the opinion of the court.

1, 2. The first point made by the defendant is that the alternative writ of *mandamus* shows on its fact that the State of Oregon has no interest in the result of this action; and that the relators have no right to prosecute the action in the name of the state. At a meeting of the state land board on November 13, 1913, two of the relators, being a majority of the members of the state land board, passed an order directing that the Treasurer deliver to G. G. Brown, clerk of the

board, the securities mentioned. It was unanimously instructed by the board that the district attorney bring proceedings to enforce the order. Pursuant to this request, the district attorney for Marion County instituted these proceedings. The petition, however, is not signed by him in his official capacity. This, however, we consider as an informality which was waived, in view of the fact that defendant answered to the merits: Section 72, L. O. L.; *State v. Chadwick,* 10 Or. 423; *Rutenic v. Hamakar,* 40 Or. 444, 454 (67 Pac. 196). This leaves the question as to the sufficiency of facts to constitute a cause of action and the jurisdiction of the court. Whether the law directs the action sought by the writ is the real question. It must be conceded that this is a public matter; that the state is vitally interested in the proper and legal transaction of all the business relating to the irreducible school fund and other·funds referred to which are held by the state for a most beneficial purpose, and which should be sacredly guarded and cared for. In order that no danger of loss or impairment of said funds should be suffered to exist, no legal questions arising in regard thereto should be lightly brushed aside.

Section 614, L. O. L., provides that the writ should be allowed upon petition of the party beneficially interested: See *State ex rel.* v. *Ware,* 13 Or. 380, 383 (10 Pac. 885); *State ex rel.* v. *Grace,* 20 Or. 154, 157 (25 Pac. 382, 383); *State ex rel.* v. *Lord,* 28 Or. 498 (43 Pac. 471, 31 L. R. A. 473); High on Ex. Remedies (3 ed.), § 431. In *State v. Grace,* 20 Or. 154, 157 (25 Pac. 382, 383), it was remarked by this court:

"While the authorities indicate some diversity of judicial opinion upon the question whether private persons can sue out the writ to enforce the performance of a public duty, unless its neglect entails some special

injury or affects some particular interest, the decided preponderance of American authority, Mr. Justice MILLER thinks, is 'in favor of the doctrine that a private person may move for a *mandamus* to enforce a public duty not due to the government as such without the intervention of the government law officers.' * * Hence, as the question at bar is one of public right, and the object of the *mandamus* is to enforce the performance of a public duty, the people being regarded as the real parties in interest, it is not necessary that the relators should show any special interest or particular right to be affected by the result."

In the case under consideration all the people of the state, in their collective capacity, constitute the real party in interest. The relators and the defendant are officers of the state, and in the inception of the controversy all apparently sought the aid of the court. It therefore becomes our duty to search the law to ascertain, if we can, who is the legal custodian of the securities named.

3. The first stone in the legal structure which it becomes necessary to examine is Article VIII, Section 5, of the Constitution of the state, which provides that the powers and duties of the board of commissioners for the sale of school and University lands and the investment of the funds arising therefrom shall be such as prescribed by law. Section 3882, L. O. L., enacts in part that "the Governor, Secretary of State, and State Treasurer are hereby made a board of commissioners for the sale of state lands, and for the investment of the funds arising therefrom, and shall be styled the 'State Land Board.'" By Section 3883, L. O. L., it is provided that the state land board shall have power to appoint a clerk, who shall be known as the clerk of the state land board and keep his office in the state house. The section authorizes him to take

74 Or.—18

and certify the proof and acknowledgment of a conveyance of real property, or any other written instrument, keep the records, files and other papers pertaining to his office, attend all the meetings of the board, keep a record of the transactions, administer oaths, receive and file applications for the purchase of lands or loans of money, receive and file communications addressed to the board, conduct correspondence required by the board, and "receive, receipt for, and make immediate payment to the State Treasurer of all moneys received for the sale of lands, taking his receipt therefor, specifying the particular fund to which such moneys belong, and whether received as principal or interest, and to perform such other duties and acts as the board may direct."

Section 3886, L. O. L., authorizes the state land board to make rules and regulations for the proper conduct of its business in conformity with the law. Therefore the efficiency of the order passed by the board depends upon whether or not it is in harmony with the statute or repugnant thereto. By an act passed in 1880 (Gen. Laws 1880, p. 11), in addition to the other duties enumerated, the clerk of the board of commissioners, as they were then styled, was to "receive, receipt for, and make immediate payment to the State Treasurer of all moneys of the state for the sale of lands (or payable to the board on any of the loans authorized by this act)." The clause inclosed in parenthesis remained in this statute until the act of 1907 (Laws 1907, p. 208), when it was eliminated. It also appears in the act of 1899 (B. & C., § 3296).

The powers and duties of the State Treasurer who is *ex officio* a member of the state land board are such as may be prescribed by law: Article VI, Section 4, of the Constitution. Section 2636, L. O. L., provides

that the State Treasurer shall keep his office at the
seat of government, shall receive and have charge of
all moneys received and paid into the state treasury,
and shall pay out the same as directed by law.   Section
2637 specifies that the State Treasurer shall give a
bond to the state in the sum of $50,000, conditioned,
among other things, that he will deliver over to his
successor in office, or to any other person authorized
by law to receive the same, all moneys, books, papers,
records and other articles and effects belonging to his
office.   Section 2658, L. O. L., makes provisions for an
additional bond to be given by the State Treasurer. ·
Section 2638 enumerates the general duties of the
treasurer.   They are, in effect, to keep the accounts
of all moneys; to pay on demand out of the state treas-
ury all sums authorized by law, etc.; to pay all war-
rants drawn on the treasury, etc.; to give receipts for
all moneys paid to him, etc.; to permit all books, papers,
and transactions of his office to be open at all times
to the inspection of the Governor, Secretary of State,
the legislature, or any committee of either branch
thereof, to examine the same; to deliver over to his suc-
cessor in office all moneys, books, papers, furniture
and other effects belonging to or preserved in his
office; and to perform all other duties imposed upon
him by law.   Section 2654 directs, among other thinks,
that:

"Nothing in this act shall be construed to deprive
the state land board of the power to invest or dispose
of the funds derived from the sale of public lands as
is now or may be provided by law."

By the Laws of 1913, Chapter 259, page 499, the state
land board may require the State Treasurer to deposit
in qualified state depositories any surplus of the funds

referred to, which are not loaned or invested in school district bonds.

By an act of the territorial legislature passed in January, 1856 (Laws of Oregon 1855–56, p. 69), it was provided that the superintendent of schools of each county should offer for sale the school lands in his respective county. Provision was made for the advertisement of sales, price and conditions of payment, to wit, one fourth of the purchase money in hand and the remainder to be secured by a note of the purchaser payable to the territorial treasurer for the use of the common school fund. Section 8 is as follows:

"It shall be the duty of any supertintendent of schools, within ten days after receiving any money, notes, or securities under the provisions of this act, to deposit the same with the territorial treasurer and file with the territorial auditor, duplicate receipts of all such deposits."

It was provided by Section 9 of the act that it should be the duty of the territorial treasurer to loan any money belonging to the common school fund which might be in the territorial treasury, the loans to be secured by a mortgage on real estate. Section 10 authorized the superintendent of common schools of the respective counties to execute and deliver deeds of conveyance to purchasers of school lands when thereto entitled. It is contended by counsel for plaintiff that this territorial statute became obsolete upon the adoption of the state Constitution. However, when the Constitution became effective February 14, 1859 (Article XVIII, Section 7), all territorial laws then in force and consistent therewith were by virtue of the article just cited, continued in force until altered or repealed.

It may therefore be stated that, beginning in 1856, the portion of the duties now devolving upon the state

land board in regard to the sale of school lands was imposed upon the several superintendents of schools in their respective counties. That part of the duties of the board relating to the loaning of the school funds was performed by the territorial treasurer, who was then the custodian of the notes and securities pertaining to the school funds. This is practically the only statutory signification that we find relating to this important trust. Under this law the ship of state sailed along without encountering any reefs or shoals of litigation in regard to who should be the custodian of these securities until A. D. 1914.

We have referred somewhat at length to the different statutes enacted since the state was admitted into the Union, not only for the purpose of ascertaining what the enactments are in this respect, but also to learn whether or not the legislature has seen fit to annul or change the custom relating to the care and custody of the securities mentioned, which came into vogue by virtue of the territorial law. This law is perfectly consistent with the Constitution, and, with the aid of the learned counsel upon both sides, we are unable to find that it has ever been altered or repealed in so far as the same relates to the custody of the notes and mortgages referred to. By virtue of the Constitution it is therefore in full force: *Runyan* v. *Winstock,* 55 Or. 202 (104 Pac. 417, 105 Pac. 895) ; *Stevens* v. *Myers,* 62 Or. 372 (121 Pac. 434, 126 Pac. 29). It is important to note that the clause in the act of 1880 authorizing the clerk of the state land board to receive and receipt for money payable to the board upon the securities in question was expressly repealed by the act of 1907 (Gen. Laws, 1907, p. 208), as under the act of 1880 there might be a necessity for the clerk of the board to have the custody of these documents

for convenience in collecting interest, etc.   The strictly
official duties of the State Treasurer, as such officer, as
distinguished from his duties as *ex officio* a member of
the state land board, are to a certain extent blended
and cannot be entirely separated.   In the absence of
statutory authority therefor, the State Treasurer can-
not be relieved of his official responsibility as custodian
of the notes, mortgages and records described in the
writ by delivering the same into the custody or entire
control of the clerk of the board or any other officer.
If any change is desired, the legislature is now in ses-
sion, and can provide therefor, or remove any doubt
that may exist.

No question relating to the collection, investment, or
paying out of the funds or any dealings with third
parties who are not officers of the state is involved in
this proceeding.   Neither is there any complaint as to
any representative of the state being denied access to
the securities and records involved.

4. In order to promote justice, the writ of *mandamus*
may properly issue to compel the State Treasurer or
other officer to perform an act which the law specially
enjoins, but the writ will not lie unless the duty sought
to be enforced is legally defined: Section 613, L. O. L.;
*Ball* v. *Lappius,* 3 Or. 56; *Mackin* v. *Portland Gas Co.,*
38 Or. 120 (61 Pac. 134, 62 Pac. 20, 49 L. R. A. 596);
*McGee* v. *Beckley,* 54 Or. 253 (102 Pac. 303, 103 Pac.
61); *First Nat. Bank of Topeka* v. *Heflebower,* 58 Kan.
792 (51 Pac. 225); 26 Cyc. 151, 234.

The lower court erred in granting the peremptory
writ, and the judgment is reversed and the writ dis-
missed.                                        REVERSED.